IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY JO TAYLOR, as mother and next friend of her
children, U.T. and T.T., et al., and on behalf of all
others similarly situated,

        Plaintiffs,

        vs.                                                               No. CIV 98-1382 JC/DJS

ROBIN OTTEN, Deputy Secretary of the New Mexico
Human Services Department, and ROSS BECKER, Acting
Director of the Medical Assistance Division of the Human
Services Department, in their official capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment, filed November 9, 1999 *(Doc. 116)* ("Motion"). The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendants' Motion is well taken in part and will be granted in part and denied in part.

**Factual Background**

On October 16, 1998, A.S. was enrolled as a member of the Presbyterian/Salud! ("Salud") Medicaid managed care program and was receiving treatment at Pinon Hills Hospital ("PHH") when the Arc of New Mexico became her guardian. On October 27, 1998, Dr. William F. Johnson, a psychiatrist at PHH, signed a Request for Involuntary Commitment of A.S. As grounds for his request, Dr. Johnson indicated that A.S. expressed "suicidal ideation" and that she "becomes out of control with agitation and irrational thinking and has bit staff members, needing seclusion and restraint two to three times per week." Defs.' Mem. Br. in Supp. of Defs.' Mot. ("Brief") ¶ 4, filed Nov. 9, 1999 *(Doc. 117)*; Request for Involuntary Commitment ¶ 2, Ex. 4 to Defs.' Br. On

November 2, 1998, a civil commitment proceeding was held and a Stipulated Order of Commitment to Las Vegas Medical Center ("LVMC") was entered. A.S. was transferred to LVMC on approximately November 15, 1998, and her Medicaid benefits were terminated as of November 30, 1998.

This lawsuit was filed as a class action suit against the Governor of the State of New Mexico and the Secretary of the New Mexico Human Services Department ("HSD"), in their official capacities. Plaintiffs claim that Defendants violated their rights under the Social Security Act, 42 U.S.C. § 1396 et seq. ("Medicaid Act"), the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"), and the Fourteenth Amendment to the United States Constitution. Subsequent to the filing of this Motion, Plaintiffs filed a Second Amended Complaint, dismissing the Governor from this action and naming a new defendant. In this Motion, Defendants address only the claims of Plaintiff Arc of New Mexico brought on behalf of A.S. Thus, this Motion addresses only the claims of A.S. against the Secretary of the New Mexico HSD.

**Standard**

Defendant moves for summary judgment as to all of the claims of Plaintiff A.S. Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

**Discussion**

**A.    Medicaid Claim**

Defendant contends that A.S. was not denied any benefit or service required under the Medicaid Act. In support of this contention, Defendant presents evidence that A.S. received case management services while residing at PHH. In response, A.S. points to the opinion of Dr. Gerald Fredman as support for her argument that she failed to receive proper case management services.[1] Dr. Fredman concluded, after having "reviewed AS's records from Pinon Hills Hospital," that "AS was denied medically necessary case management services." *See* Aff. of Dr. Gerald Fredman ¶ 3, 4, Ex. 1 to Pls.' Resp. in Opp'n to Defs.' Mot. ("Response"), filed Nov. 9, 1999 *(Doc. 118)*. Plaintiff also presents evidence that case management duties were sometimes performed in a less than conscientious manner.[2] I find that Plaintiff's evidence creates a genuine issue over whether A.S. received case management services as required under the Medicaid Act, therefore summary judgment on this claim will be denied.

Defendant next contends that any failure to provide case management services was not the proximate cause of harm to A.S. Defendant claims that A.S.'s placement at LVMC resulted from a civil commitment proceeding and not a lack of case management services. Defendant points to the testimony of Ms. Faith-Heuertz, A.S.'s guardianship coordinator, to support the argument that case management services were no benefit, given the fact of A.S.'s civil commitment. *See* Dep. of Faith-Heuertz at 129, Ex. 1 to Defs.' Br. In response, Plaintiff relies on Dr. Gerald Fredman's opinion as evidence that the placement of A.S. at LVMC was clinically inappropriate, and that the

---

[1] The parties apparently do not dispute that the Medicaid Act requires that its recipients receive case management services.

[2] Affidavits of Ms. Faith-Heuertz indicate that case managers were sometimes difficult to contact, failed to return telephone calls, and refused to attend treatment team meetings.

denial of "medically necessary case management services . . . caused [A.S.'s] civil commitment." Aff. of Dr. Fredman ¶¶ 4, 9 (emphasis added), Ex. 1 to Pls.' Resp. Dr. Fredman concluded that A.S.'s civil commitment to LVMC "would have been avoided if appropriate case management services would have been provided." *Id.* ¶ 16.

The parties do not dispute that A.S.'s transfer to LVMC resulted in the loss of her Medicaid benefits. Thus, assuming the truth of Dr. Fredman's opinion, a reasonable inference is that a lack of case management services was the proximate cause of the termination of A.S.'s Medicaid benefits. Because Plaintiff has presented sufficient evidence to create a genuine issue over whether a lack of case management services was the proximate cause of harm to A.S., summary judgment will not be granted on this basis.

**B.     ADA Claim**

"[N]o qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1995). The ADA does not require a finding of discriminatory intent in order to establish a violation. *See Alexander v. Choate*, 469 U.S. 287, 296-97(1985). Defendants assert that because A.S. has not been denied any medically necessary services, she has no valid claim under the ADA. Defendant further contends that in order to establish her ADA claim, Plaintiff must demonstrate that any denial of access to care was solely as a result of her illness. Plaintiff counters that A.S. was denied case management services and "access to a minimally adequate array of mental health services." Pls.' Resp. ¶ 27. In order to establish a violation based on an alleged denial of service, Plaintiff must show that the service was denied "by reason" of her disability. However, Plaintiff all but ignores the issue of disability based discrimination. In her Response, Plaintiff offers only conclusory allegations of discrimination and fails to provide evidence

that A.S. was denied any service because of her disability or illness. Accordingly, summary judgment will be granted in favor of Defendant on A.S.'s claim under the ADA.

C. **Due Process Claim**

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "[I]t is clearly established that once an individual is a recipient of direct Medicaid benefits, such benefits are a protected property interest that cannot be withdrawn without giving the recipient notice and an opportunity to be heard." *Johnson v. Guhl*, No. 99-CIV- 5403 WGB, 2000 WL 359624, at *16 (D.N.J. Apr. 7, 2000) (citing *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 787 (1980); *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970)). Moreover, the United States Supreme Court found that Medicaid patients have standing to bring a due process claim when a health care facility discharges them or transfers them to a lower level of care. *See Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) ("[Plaintiff's] constitutional attack on discharges or transfers to a lower level of care presupposes a deprivation of protected property interests.").

Here, the parties apparently do not dispute the fact that A.S.'s confinement to LVMC directly resulted in the termination of her eligibility for Medicaid benefits.[3] I find that important interests are at stake where a transfer to another facility will foreseeably result in the termination of the patient's Medicaid benefits. *See, e.g., Perry v. Chen*, 985 F. Supp. 1197, 1202-03 (D. Ariz. 1996) (finding that due process standards may apply where the level of service rather than Medicaid eligibility is at issue). Accordingly, A.S.'s Medicaid eligibility and her interest in receiving treatment at PHH (or

---

[3] On one hand, the parties seem to accept that a period of confinement to LVMC for more than thirty days automatically results in the loss of Medicaid benefits. On the other hand, the parties do not dispute the fact that A.S.'s Medicaid benefits were terminated approximately fifteen days following her transfer to LVMC.

another facility that would not result in the termination of Medicaid eligibility) constitutes a protected property interest.

*Civil Commitment Proceeding as Due Process*

Defendant contends that if A.S. was deprived of a protected property interest, the civil commitment proceeding provided all the due process to which she is entitled. However, Defendant does not present evidence that the Arc was notified as to how A.S.'s commitment to LVMC would affect her Medicaid benefits. Therefore, even assuming that the commitment satisfied A.S.'s due process rights regarding the transfer and commitment itself, it does not absolve the HSD of its obligation to provide due process regarding its decision to terminate A.S.'s Medicaid benefits on November 30, 1998. There is no evidence that the civil commitment proceeding was intended to, or in fact did, specifically address the due process rights of A.S. regarding the termination of her Medicaid eligibility. Thus, the commitment proceeding and stipulated order of November 2, 1998, cannot serve as due process regarding the termination of A.S.'s Medicaid benefits on November 30, 1998. Consequently, summary judgment will not be granted on the grounds that the civil commitment proceeding provided all the due process to which A.S. was entitled.

*Waiver of Due Process Rights*

Defendant also asserts that A.S. waived her rights to due process when the Arc was notified of its right to request an administrative hearing and failed to do so. Due process rights may be waived, depending on the particular factual circumstances, only if those rights are waived in an informed manner. *See Pitts v. Board of Educ.*, 869 F.2d 555, 557 (10th Cir. 1989). Defendant presents evidence that the Arc was notified of its right to request an administrative hearing prior to A.S.'s transfer to LVMC. *See* Letter marked "Received November 5, 1998," Ex. 6 to Defs.' Br. However, this letter did not notify the Arc of the impact the transfer would have on A.S.'s Medicaid

eligibility. Nor is there evidence that the Arc was otherwise aware that the transfer could result in the termination of A.S.'s benefits. Lacking this crucial information, it is doubtful that the Arc could waive its right to due process in an informed manner. Even assuming that, under these facts, the Arc did waive its right to due process regarding the transfer itself, Plaintiff's lack of knowledge regarding the consequences of the transfer would prevent the waiver from extending to the decision to terminate A.S.'s Medicaid eligibility on November 30, 1998. Accordingly, the Court will not grant summary judgment based on Defendant's claim that A.S. waived her due process rights.

*State Action*

Finally, Defendant asserts that Dr. Johnson is responsible for A.S.'s transfer to LVMC, which ultimately resulted in the termination of A.S.'s Medicaid benefits. Defendant further claims that because Dr. Johnson's decision to transfer A.S. did not constitute state action, no due process claim is implicated. Plaintiff responds that the conduct of Dr. Johnson, various managed care organizations ("MCOs"), and the HSD all constituted state action. Plaintiff essentially argues that the relationship between the state, the private actors, and the Plaintiff converted the conduct of these private actors into state action. Although I find that no state action was involved in A.S.'s transfer to LVMC, I find that state action was involved in the ultimate termination of A.S.'s Medicaid eligibility.

First, the HSD did not make the decision to discharge A.S. from PHH. Although Plaintiff presents evidence that the HSD may have been aware that the Arc filed a grievance with Salud, that fact is insufficient to convert the decision to transfer A.S. to state action. *See Sullivan*, 526 U.S. at 54-55 (finding no state action in a private insurer's denial of a disputed medical payment where the state agency was aware that a utilization review was requested). Moreover, the Arc apparently filed a grievance only through Salud's internal dispute resolution system and did not request an administrative hearing before the HSD.

Second, Dr. Johnson's decision to transfer A.S. to LVMC was apparently based on his assessment of A.S. and not on standards established or mandated by the state. Thus, the HSD apparently did nothing to encourage, coerce, or compel his decision to seek civil commitment. *See Sullivan*, 526 U.S. at 52-53 (private insurer's decision to withhold payments on disputed worker's compensation medical bills is not state action); *Blum*, 457 U.S. at 1008 (nursing home's decision to transfer Medicaid patients to a lower level of care is not state action).

Third, Plaintiff's reliance on *West v. Atkins*, 487 U.S. 42 (1988) is misplaced. In *West*, state action was found where the traditionally exclusive public function of providing medical treatment to inmates was delegated to a private physician. *See id.* at 54-56. However, the facts of this case are readily distinguishable from those of *West*. Here, although the state provides medical benefits to its indigent citizens through a Medicaid program, the provision of medical services is not traditionally an exclusive public function. Moreover, unlike the prison inmates of *West*, the recipients of Medicaid services are not prohibited from obtaining medical care from sources other than those which are Medicaid funded.[4] Thus, *West* does not control. Finally, while Plaintiff contends that Dr. Johnson's conduct constitutes state action, Defendant correctly notes that Plaintiff does not sue any of the individual health care providers or the MCOs involved in A.S.'s care. Accordingly, I find that no state action was involved when A.S. was discharged from PHH and transferred to LVMC.

However, even though no state action was involved in the transfer of A.S. to LVMC, Plaintiff presents evidence that the HSD ultimately terminated A.S.'s Medicaid benefits without providing due process. Although A.S.'s Medicaid benefits were apparently terminated on November 30, 1998,

---

[4] While I realize that it may be practically difficult for an indigent person to obtain health care services from sources other than Medicaid, it is not prohibited.

Ms. Faith-Heuertz contends that she did not receive any notice prior to this termination.[5] *See* Letter from HSD to Ms. Faith-Heuertz, Ex. 8 to Defs.' Mot.; Third Aff. of Faith-Heuertz ¶13, Ex. 13 to Pls.' Resp. This evidence establishes a genuine issue of material fact over whether A.S. received notice prior to the termination of her Medicaid eligibility by the HSD. Accordingly, Defendant's motion for summary judgment based on a lack of state action will be denied, as applied to the termination of A.S.'s Medicaid eligibility.

**Conclusion**

Defendant's summary judgment motion will be granted in part and denied in part. Summary judgment will be denied as to A.S.'s Medicaid claim and due process claim because material fact issues must be resolved. Summary judgment will be granted on Plaintiff's ADA claim because she presents no evidence that services were denied to her by reason of a disability.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment *(Doc. 116)* is **granted** in part and **denied** in part.

IT IS ORDERED that summary judgment is **denied** as to A.S.'s Social Security Act ("Medicaid Act") claim against Defendant Secretary of the New Mexico Human Services Department.

IT IS ORDERED that summary judgment is **granted** as to A.S.'s Americans with Disabilities Act claim against Defendant Secretary of the New Mexico Human Services Department.

---

[5] Ms. Faith-Heuertz further contends that she did not receive *written* notice of the termination until May 14, 1999. *See* Third Aff. of Faith-Heuertz ¶ 13, Ex. 13 of Pls.' Resp. *(Doc. 118)*.

IT IS ORDERED that summary judgment is **denied** as to A.S.'s claim that Defendant Secretary of the New Mexico Human Services Department denied her due process in terminating her Medicaid eligibility.

DATED this 24th day of May, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:

    Philip C. Gaddy
    Gaddy & Hall
    Albuquerque, New Mexico

    Daniel Shapiro
    Shapiro and Bettinger LLP
    Albuquerque, New Mexico

    Peter M. Cubra
    Tara Ford
    Albuquerque, New Mexico

    Damon B. Ely
    Albuquerque, New Mexico

    Steven F. Granberg
    Albuquerque, New Mexico

    John Newman Carr
    Albuquerque, New Mexico

Counsel for Defendants:

    Douglas A. Baker
    Allen C. Dewey, Jr.
    Patrick J. Rogers
    Special Assistant Attorneys General
    Albuquerque, New Mexico